UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cr-78

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | **MONEY JUDGMENT AND** |
| v. | ) | **PRELIMINARY** |
| | ) | **ORDER OF FORFEITURE** |
| RAMI MAHMOD MHANA | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Government's Motion, pursuant to 18 U.S.C. §§ 2428 and 981, 28 U.S.C. § 2461(c), Fed. R. Crim. P. 32.2(b), and the Special Verdict (Doc. 52) on forfeiture, requesting that this Court enter (1) a $3,649,033 forfeiture Money Judgment for proceeds of the interstate transportation of stolen property conspiracy and substantive offense; (2) a Preliminary Order of Forfeiture for the electronic devices and funds for which the Jury returned a Special Verdict of Forfeiture based on their nexus to the conspiracy and substantive offense; and (3) a Preliminary Order of Forfeiture for the seized currency, finding that the seized currency is 21 U.S.C. § 853(p) substitute property forfeitable in partial satisfaction of the forfeiture Money Judgment. For the reasons stated in the Motion and based on the preponderance of the evidence and information in this case, this Court hereby **GRANTS** the Motion and **FINDS AS FOLLOWS**:

### I. BACKGROUND

On December 14, 2022, a Grand Jury in the Western District of North Carolina returned a Superseding Bill of Indictment (Doc. No. 20; hereafter, "Indictment") against Defendant, charging Defendant with conspiracy, interstate transportation of stolen goods, wire fraud, and money laundering. The Indictment also contained a "Notice of Forfeiture and Finding of Probable Cause," whereby the Grand Jury found probable cause that all properties that constitute

1

or derived from proceeds obtained, directly or indirectly, of the violations and all properties used or intended to be used to commit or facilitate the violations were subject to forfeiture. The finding of probable cause specifically identified the following property as subject to forfeiture:

> Approximately fifty-five new-in-box iPhones, six new-in-box Apple iPads, one new-inbox Apple watch, and four new-in-box Apple AirPods located by DHL in or about April and May 2019 and voluntarily turned over by DHL to United States Secret Service on or about October 4, 2019, all such items obtained by DHL from a larger shipment from numerous senders, including but not limited to MHANA, with a labeled destination of Union Logistics FZE in the U.A.E.;

> Approximately fifty-two new-in-box iPhones seized on or about October 9, 2019, pursuant to a federal Search Warrant, from Protocol's retail location at 441 Bradford Drive, Charlotte, North Carolina (all electronic devices hereafter collectively identified as "the Seized Electronic Devices"); and

> Approximately $20,536.20 in funds seized on or about October 9, 2019, pursuant to a federal Seizure Warrant, from Fifth Third Bank account XXXXX0126, such account held in the name of Protocol Business Group, Inc. (hereafter, "the Seized Funds").

The forfeiture Notice in the Superseding Indictment also identified that substitute property was subject to forfeiture.[1] The Government contends that the following property constitutes substitute property subject to forfeiture:

> Approximately $178,582 in United States Currency seized on or about October 9, 2019, pursuant to a federal Search Warrant, from Protocol's retail location at 441 Bradford Drive, Charlotte, North Carolina (hereafter, "the Seized Currency").

Defendant pled not guilty and elected a jury trial. During the criminal trial, the Government introduced and the Court admitted evidence that established, among other facts, that Defendant, acting via his business, Protocol Business Group, Inc. and its Bradford Drive storefront, made cash withdrawals from his accounts and used cash to purchase thousands of

---

[1] Before trial, the Court granted Defendant's unopposed Motion to Dismiss Count Six of the Superseding Indictment alleging wire fraud conspiracy to defraud wireless carriers by unlocking iPhones without authorization. See Motion to Dismiss, Doc. No. 45 (May 12, 2023). Thereafter, the Government filed a redacted Indictment renumbering money laundering Counts Seven and Eight as Six and Seven. The dismissal of Count Six does not impact forfeiture in any way.

stolen and fraudulently obtained Apple iPhones and other electronic devices; sold and shipped these devices to the United Arab Emirates and the Hong Kong Special Administrative Region of the People's Republic of China; and, in exchange for the sales, received millions in wires into his Fifth Third accounts. For example, the Court admitted the following evidence:

- Testimony of federally-convicted defendants Damonte Withers and Dayton Kolczak that conspirators sold fraudulently-obtained new-in-box phones at Protocol and that Protocol paid cash for the phones;
- Fifth-Third Bank documents reflecting over $860,000 in cash withdrawals in the time-period leading up to the October 2019 search of Protocol's storefront. Govt. Tr. Ex. 920; and
- DHL records that reflected millions of dollars of DHL shipments of phones overseas to stolen electronics purchaser Union Logistics FZE, as well as Fifth Third bank records that reflected wires of $4,547,411 from Union Logistics into Fifth-Third accounts during the conspiracy. Govt. Tr. Exs. 903 and 915.

Further, the trial evidence and/or information on the record for purposes of sentencing reflects that Verizon lost approximately $1,351,987 as a result of the fraud; AT&T lost approximately $2,130,901 as a result of the fraud; and T-Mobile lost approximately $157,366 as a result of the fraud.[2]

The Jury returned verdicts of guilt (Doc. 51), finding Defendant Guilty of Section 371 conspiracy to engage in 18 U.S.C. § 2314 interstate transportation of stolen property and of substantive interstate transportation of stolen property offenses. Further, following brief argument

---

[2] The sentencing materials forth more fully the $3,649,033 in losses by Verizon, AT&T, T-Mobile, and Sprint, as well as a summary of the trial evidence. As noted in the sentencing materials, the losses likely exceed $3,649,033.

by the Government and Defendant, the Jury also returned a Special Verdict (Doc. 52) for forfeiture of all the Seized Electronic Items and Seized Funds. The Special Verdict constituted a finding by the Jury that there was a nexus between Counts One and Two, and the Seized Electronic Items and Seized Funds. Specifically, law enforcement seized some of the Electronic Items enroute to buyers overseas and some of the items from the Protocol storefront, and obtained the Seized Funds from a Fifth Third account that Protocol used to receive crime proceeds.

The Government now requests that this Court issue a Money Judgment equivalent to the most conservative estimate ($3,649,033) on the record of proceeds of the crime, issue a Preliminary Order of Forfeiture for the Seized Electronic Items and Seized Funds for which the Jury has already found a nexus, and issue a Preliminary Order of Forfeiture for the Seized Currency, which the Government contends is substitute property.

## II. LEGAL CONCLUSIONS

### A. Forfeiture of the Proceeds and Facilitating Property

Under federal law, any person who is convicted of an interstate transportation conspiracy or substantive offense shall forfeit any property which constitutes or is derived from proceeds obtained directly or indirectly from the offense. 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of conspiracy and specified unlawful activity proceeds) and 2428(a)(2) (criminal forfeiture of ITSP proceeds); 28 U.S.C. § 2461(c) (rendering criminal forfeiture available in any case in which civil forfeiture is authorized). Further, such person must also forfeit any property used or intended to be used to facilitate the interstate transportation offense. 18 U.S.C. § 2428(a)(1).

Forfeiture of proceeds and facilitating property is appropriate upon a court finding of a nexus—meaning a connection (in the case of proceeds) or substantial connection (in the case of

facilitating property)—between the property and the violations. Fed. R. Crim. P. 32.2(b)(1)(A); See United States v. Farkas, 474 Fed. Appx. 349, 359–60 (4th Cir. 2012) (affirming order of forfeiture whereby district court found that business would not have been solvent but for crimes, and therefore ordered forfeiture of assets); United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010) (describing substantial connection test used to determine forfeitability of facilitating property); United States v. Ivanchukov, 405 F. Supp. 2d 708, 712 (E.D. Va. 2005) (setting forth "but for" test in case involving proceeds of conspiracy to commit immigration fraud). The finding may be based on evidence already in the record and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. Fed. R. Crim. P. 32.2(b)(1)(B). The burden of proof on forfeiture is preponderance of the evidence. See, e.g., United States v. Cherry, 330 F.3d 658, 669 (4th Cir. 2003). Here, the preponderance standard is easily satisfied.

Specifically, at the trial of this matter, the Government introduced evidence that established, among other facts, that Defendant purchased thousands of stolen and fraudulently obtained electronic devices and shipped these devices to the United Arab Emirates and Hong Kong in exchange for proceeds. For example, as summarized above and on the trial and sentencing record, the Government introduced Fifth-Third and Protocol records that Defendant, through Protocol, withdrew approximately $867,500 in cash from Fifth-Third accounts during the scheme and paid cash for phones, shipped millions of dollars' worth of phones via DHL, and received more than $4.5 million in wires from phone purchaser Union Logistics during the scheme.

Such evidence, along with the Verdict and Forfeiture Verdict, establishes by a preponderance of the evidence that the Seized Electronic Devices and Seized Funds were proceeds

of and used or intended to be used to commit or promote the commission of the Count One and Count Two offenses.

### B. Forfeiture of the Money Judgment

Fed. R. Crim. P. 32.2(b)(1)(A) supports imposition of a money judgment when the Court finds the amount of money that a Defendant will be ordered to pay. Fed. R. Crim. P. 32.2; see also 21 U.S.C. § 853; United States v. Chamberlain, 868 F.3d 290, 296 (4th Cir. 2017) (in opinion disallowing pretrial restraint of substitute assets, discussing issuance of money judgments in Fourth Circuit)[3] (citing United States v. McHan, 345 F.3d 262, 272 (4th Cir. 2003)). Rule 32.2 provides in pertinent part as follows: "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A); see also United States v. Butler, 578 Fed. Appx. 178, 182 (4th Cir. 2014) (district court must find nexus between forfeiture calculation and crime).

Courts have construed the liability imposed on an individual defendant to extend to liability for property that defendant obtained via entities or accounts which he controlled. Saccoccia v. United States, 955 F.3d 171, 175 (1st Cir. 2020) (collecting some cases on receipt of proceeds through entities and accounts that defendant owned, operated, or controlled); see United

---

[3] It is unclear whether the 21 U.S.C. § 853(p) substitute property provisions impact whether a court should issue a forfeiture money judgment. Although they likely do not, by the express language of Section 853(p), impact money judgment analyses, if they did impact such analyses, the substitute property provisions would apply if, as a result of any act or omission of defendant, the otherwise forfeitable property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. 21 U.S.C. § 853(p)(1)-(2). In a case such as this, in which property was received in an account in a business name and regularly wired overseas, commingled in the form of cash with money from other stores, and regularly expended to further the scheme, and in which law enforcement only located a relatively small amount of proceeds in Fifth Third accounts, these substitute property provisions are satisfied.

States v. Carpenter, 941 F.3d 1, 9 n.6 (1st Cir. 2019) (focusing the post-Honeycutt money judgment analysis of a provision of Section 981 on the word, "acquire"; reasoning that defendant liable for proceeds under his control at some point); United States v. Jergensen, 797 Fed. Appx. 4, 8 (2d Cir. 2019) (each defendant liable for transfer that he approved); United States v. Bergstein, 788 Fed. Appx. 742, 748 (2d Cir. 2019) (defendant liable for proceeds that he controlled); United States v. Chittenden, 896 F.3d 633, 638–39 (4th Cir. 2018) (forfeiture limited to property that defendant acquired).

In this case, the Government has limited its request to a calculation of a money judgment equivalent to even less than the amount of proceeds to which Defendant was convicted of receiving at trial—proceeds which, by virtue of how Defendant coordinated the scheme and controlled the business, he directly or indirectly received. Specifically, as set forth in the trial evidence and testimony, Defendant received over $4.5 million in proceeds. And, according to the trial evidence and sentencing information, of this amount, Verizon, AT&T, Sprint, and T-Mobile have confirmed $3,649,033 directly relates to losses that these entities have investigated. Thus, at an absolute bare minimum, Defendant obtained $3,649,033 in proceeds, and likely much more.

Under such circumstances, based on the record and Rule 32.2(b)(1)(A), a money judgment of, at the very least, $3,649,033 in proceeds, is appropriate. See United States v. Blackman, 746 F.3d 137, 143–44 (4th Cir. 2014) (discussing that fact "that defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order" since forfeiture is calculated based on total proceeds of crime, not percentage remaining in defendant's possession).

### C. Forfeiture of the Substitute Property

Further, upon satisfaction of the substitute property provisions of 21 U.S.C. § 853(p)(1)(A)-(E), the Court also has the authority to order the forfeiture of substitute assets to satisfy a forfeiture money judgment. Fed. R. Crim. P. 32.2(e); 21 U.S.C. § 853(p)(2); United States v. Johnson, 2023 WL 5811532, at *4 (W.D.N.C. Sept. 7, 2023) (in bank fraud case, Judge Reidinger finding substitute property provision satisfied). Substitute assets are forfeitable even if held in the names of corporations controlled by the Defendant. See United States v. Jaynes, 2013 WL 4009650, at *3 (W.D.N.C. Aug. 5, 2013) (property of a defendant's corporation is that defendant's property for purposes of Section 853(p)). Here, as the record reflects, Defendant either squandered, reinvested, or used much of the proceeds to continue perpetrating the scheme of buying new phones, and, when law enforcement executed warrants and ceased his operations, only the small amount of Seized Funds and Seized Electronic Items remained as available proceeds subject to forfeiture. For example, in the Affidavit to the Government's Motion, United States Secret Service Task Force Officer Matthew Mescan confirmed that, despite diligent searching by law enforcement, law enforcement could not find any remaining proceeds other than the Seized Funds and Seized Electronic Items, and could not untangle the myriad cash transactions involving cash used in the crimes and cash involved in Defendant's other apparent exploits. Accordingly, the Seized Currency retrieved from Defendant's business is subject to forfeiture as substitute property.

It is, therefore **ORDERED**, based upon Defendant's conviction, the evidence, and the information on the record, as follows:

1. Defendant is liable for a $3,649,033 Money Judgment, to be enforced and collected upon via the provisions of Fed. R. Crim. P. 32.2, 21 U.S.C. § 853, 18 U.S.C. §§ 981

and 2428, and 28 U.S.C. § 2461(c).

2. The United States has established a nexus between the Seized Electronic Devices and the Seized funds, and the offenses of conviction; and has satisfied the substitute property factors and established that the Seized Currency is properly forfeitable pursuant to the substitute property provisions. Thus, the United States is authorized to take and maintain possession of the following property belonging to Defendant, and the property is hereby forfeited to the United States for disposition according to law, provided, however, that such forfeiture is subject to any and all third party claims and interests, pending final adjudication herein:

- Approximately fifty-five new-in-box iPhones, six new-in-box Apple iPads, one new-inbox Apple watch, and four new-in-box Apple AirPods located by DHL in or about April and May 2019 and voluntarily turned over by DHL to United States Secret Service on or about October 4, 2019, all such items obtained by DHL from a larger shipment from numerous senders, including but not limited to MHANA, with a labeled destination of Union Logistics FZE in the U.A.E.;
- Approximately fifty-two new-in-box iPhones seized on or about October 9, 2019, pursuant to a federal Search Warrant, from Protocol's retail location at 441 Bradford Drive, Charlotte, North Carolina;
- Approximately $20,536.20 in funds seized on or about October 9, 2019, pursuant to a federal Seizure Warrant, from Fifth Third Bank account XXXXX0126, such account held in the name of Protocol Business Group, Inc. (hereafter, "the Seized Funds"); and
- Approximately $178,582 in United States Currency seized on or about October 9, 2019, pursuant to a federal Search Warrant, from Protocol's retail location at 441 Bradford Drive, Charlotte, North Carolina.

3. Pursuant to 21 U.S.C. § 853(n)(1), the Government shall publish notice of this order; notice of its intent to dispose of the property in such manner as the Attorney General

9

may direct; and notice that any person, other than the Defendant, having or claiming a legal interest in any of the above-listed forfeited property must file a petition with the Court within thirty days of the final publication of notice or of receipt of actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought. The United States may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in property that is the subject of this Order of Forfeiture, as a substitute for published notice as to those persons so notified.

4. Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture. If no third parties file petitions within the time period permitted by law, this Order shall become final by operation of law.

5. All finally forfeited assets shall be credited against the outstanding balance of the Money Judgment Order issued by this Court.

**SO ORDERED**.

Signed: October 18, 2023

Max O. Cogburn Jr.
United States District Judge